# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CP-00575-COA

CARI WHITE                                                                          APPELLANT

v.

MATTHEW C. WHITE                                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/2025 |
| TRIAL JUDGE: | HON. JOSEPH PRESTON DURR |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CARI WHITE (PRO SE) |
| ATTORNEY FOR APPELLEE: | MATTHEW C. WHITE (PRO SE) |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 07/21/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., EMFINGER AND LASSITTER ST. PÉ, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Cari White appeals the final judgment of the Chancery Court of Copiah County awarding her and her husband, Matthew White, joint physical and legal custody of their three children. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Cari and Matthew were married on July 7, 2007. Three sons were born of the marriage: C.W. (born in 2010), J.W. (born in 2012), and V.W. (born in 2018).  The parties separated on February 23, 2023, and Cari filed for divorce on March 22, 2023, pleading habitual cruel and inhuman treatment and, in the alternative, irreconcilable differences. Matthew filed his answer and a counterclaim on April 14, 2023, and pled the same grounds as Cari. Cari answered Matthew's counterclaim on April 14, 2023. Both parties sought the

temporary and permanent care and legal and physical custody of their minor children.

¶3.     On April 24, 2023, Cari moved for temporary financial relief. On May 9, 2023, the parties entered into an agreed order appointing Megan Rogers-Hasie as guardian ad litem (GAL).[1] On June 27, 2023, the parties entered into an agreed temporary order awarding joint legal and physical custody of the children, with one of the parties residing in the previous marital home with the children every other week. The parties also agreed to certain financial matters, which are not the subject of this appeal.[2]

¶4.     On December 13, 2023, Cari and Matthew consented to divorce on the ground of irreconcilable differences, allowing the chancellor to make a determination regarding all other issues, including custody of the children. On March 5, 2024, the GAL filed a motion for emergency relief claiming that immediate and irreparable harm would come to the children if the chancellor failed to grant sole custody to Cari on an emergency basis. On March 21, 2024, Cari filed a joinder in that motion. Matthew filed a response to the motion for emergency relief on March 20, 2024, which included a counter-motion requesting that the GAL be removed entirely or another GAL be appointed to deal with the preferences of the two older children. On March 26, 2024, the chancellor dismissed the GAL's motion for emergency relief and Cari's joinder, finding that the GAL did not have the authority to file

---

[1] The GAL was appointed after Matthew alleged during a hearing on April 19, 2023, that Cari had physically abused C.W. and J.W. Those claims were later found unsubstantiated.

[2] On December 13, 2023, the chancellor ordered the parties to mediate. The mediator reported to the court on February 8, 2024, that the mediation was complete but was unsuccessful.

such a motion. After being advised by Matthew's attorney that he intended to call two of the children to testify for their father, on March 8, 2024, the GAL also filed a motion for a *Jethrow* analysis to determine the competency and best interest of the children prior to the chancellor receiving any testimony from the children.[3] In his response to the emergency motion, Matthew stated he had no opposition to the chancellor conducting a *Jethrow* examination of any of the children as requested by the GAL.

¶5.     On June 12, 2024, the two older sons expressed their preference to reside with Matthew. The parties filed a joint pre-trial order on August 6, 2024, and the GAL filed her report and a supplement thereto on August 12, 2024. The case was tried on August 13-14, 2024, and concluded on December 9, 2024. The court issued its "Findings of Fact, Conclusions of Law and Judgment" on April 30, 2025, finding, along with all other pending issues which are not subject to this appeal, that the parties would continue to share joint physical and legal custody of the sons just as they had been doing, only in separate residences. Cari appealed.

## STANDARD OF REVIEW

¶6.     In *Smith v. Smith*, 379 So. 3d 954, 961 (¶18) (Miss. Ct. App. 2024), this Court explained:

> "A chancellor's custody decision will be reversed only if it was manifestly wrong or clearly erroneous, or if the chancellor applied an erroneous legal standard." *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012). "[T]his Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Hall v. Hall*, 134 So. 3d 822, 828 (¶21) (Miss. Ct. App. 2014). "[T]he issue is not whether this

---

[3] *Jethrow v. Jethrow*, 571 So. 2d 270 (Miss. 1990).

Court 'agrees with the chancellor's ruling,' but only whether 'the chancellor's ruling is supported by credible evidence.'" *Sanders v. Sanders*, 281 So. 3d 1043, 1049-50 (¶21) (Miss. Ct. App. 2019) (quoting *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004)).

## ANALYSIS

¶7. Before beginning our analysis, we address Matthew's failure to file a brief. In *Briggs v. Jackson*, 426 So. 3d 1106, 1112 (¶12) (Miss. Ct. App. 2025), we explained:

> In a circumstance such as this, the reasoning in *Jay Foster PLLC v. McNair*, 175 So. 3d 565, 571 (¶15) (Miss. Ct. App. 2015), controls:
>
> > [T]his Court has two options. First, we may take the appellee's failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. However, if the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we may disregard the appellee's error and affirm.
>
> (quoting *Hatton v. Hatton*, 323 So. 3d 1149, 1153 (¶7) (Miss. Ct. App. 2021)). More specifically, we further explained in *Briggs* [*v. Weary*], 396 So. 3d [1246,] 1254-55 (¶35) [(Miss. Ct. App. 2024)], regarding matters involving minor children:
>
> > "In matters of child custody and support, . . . in the absence of an appellee's brief, our practice is to make a special effort to review the record for support for affirmance." *Edwards v. Edwards-Barker*, 875 So. 2d 1126, 1128 (¶5) (Miss. Ct. App. 2004) (quoting *Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992)). When child custody is at issue, "this Court is compelled to review the record" despite the appellee's failure to file a brief. *Shows v. Cross*, 238 So. 3d 1224, 1232 (¶31) (Miss. Ct. App. 2018) (quoting *Vassar v. Vassar*, 228 So. 3d 367, 374 (¶22) (Miss. Ct. App. 2017)). We do this because "when matters on appeal touch the welfare of a minor child, . . . regardless of whether a party filed a brief, this Court will reach the merits of

4

the issues in this appeal, though we proceed unaided by a brief from the appellee." *N.E. v. L.H.*, 761 So. 2d 956, 962 (¶14) (Miss. Ct. App. 2000).

Despite Matthew's failure to file a brief, we address the issues raised by Cari on appeal.

¶8.     Cari argues that the chancellor abused his discretion when he failed to apply the best-interest-of-the-child standard under Mississippi Code Annotated section 93-5-24 (Rev. 2021); failed to properly consider the evidence and testimony, including the GAL's report and recommendations; and demonstrated procedural bias in his findings by treating the parties unequally and making factual findings unsupported by the record. We discuss these issues together. Cari also alleges that the chancellor erred by rejecting the GAL's recommendation without providing adequate justification.

## I.     Whether the chancellor's custody determination was flawed.

¶9.     In *Smith v. Smith*, 206 So. 3d 502, 512-13 (¶24) (Miss. 2016), the supreme court explained:

> The foremost consideration in any custody decision is "the best interests and welfare of the minor child." *Albright v. Albright*, 437 So. 2d 1003, 1004-05 (Miss. 1983). In *Albright*, we gave a list of factors for chancellors to consider when "navigating" the "labyrinth of interests and emotions" involved in custody battles. *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001) (citing *Albright*, 437 So. 2d at 1005). While there is an established list of *Albright* factors, these factors are not variables in a mathematical formula. Nor is an *Albright* analysis "premised solely on a scoring system" where findings on each factor are added and later compared to see which parent "wins." *O'Briant v. O'Briant*, 99 So. 3d 802, 805-06 (Miss. Ct. App. 2012) (citations omitted). Rather, the "factors exist to ensure the chancellor considers all the relevant facts" before making a decision. *Id*. (citations omitted). This is why our manifest-error review "is not a mechanical check on the chancellor's score card" to decide if he or she "'tallied' each parent's score correctly." *Id*. at 806 (citations omitted). We instead ask whether the chancellor considered all relevant facts, giving deference to the weight he or she assigns each factor.

¶10.    The chancellor specifically recognized in his order that he was obligated to put the best interests of the children above all else:

> In all child custody cases, the polestar consideration is the best interest and welfare of the child. *Hayes v. Rounds*, 658 So. 2d 863 (Miss. 1995); *Smith v. Todd*, 464 So. 2d 1155 (Miss. 1985); *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). In fact, the Chancellor is never obliged to ignore the child's interest when weighing custody matters, but must consider the child's best interest above all else. *Riley v. Doerner*, 677 So. 2d 740 (Miss. 1996).

¶11.    In his forty-three-page opinion, the chancellor considered each *Albright* factor and found most of them neutral or not favoring either party. In keeping with the principles set forth above in *Smith*, we consider the chancellor's consideration of each *Albright* factor.

### A.    Age, Health, and Sex of the Children

¶12.    The chancellor found this factor slightly favored Matthew because all the children are male, the middle one was nearing adolescence, and the eldest was entering adulthood. The chancellor found that a strong male influence would be helpful during this time in their lives.

### B.    Continuity of Care

¶13.    The chancellor found this factor neutral since Cari was the primary caregiver prior to the separation, but the children had been solely in Matthew's care for approximately six months after the separation. Further, the chancellor noted that since the entry of the temporary agreed order almost two years prior, Cari and Matthew had shared joint physical custody.

### C.    Parenting Skills

¶14.    The chancellor found this factor favored neither party, as "[b]oth parents have exhibited concerning parenting behaviors." The chancellor explained those concerning

6

behaviors at length in the order. Matthew had discussed the litigation and Cari's infidelity with the older boys, causing that bond to weaken. He also gave the older sons inappropriate freedoms and even called the oldest son a homophobic slur. Cari also exhibited questionable behavior, having an affair and leaving the children with Matthew for six months. The chancellor also noted Cari had difficulty controlling the oldest son. The evidence in the record supports the chancellor's finding.

### D. Willingness to Provide Primary Care

¶15. The chancellor found that both parents are willing and able to provide care for their children. He also found that both were working on correcting the flaws in their parenting skills. He found this factor neutral.

### E. Employment and Responsibilities of the Parents

¶16. Matthew has been employed with the same company for eight years and works remotely, with little need for travel. He gets the children to school in the mornings and is with them in the evenings. Cari, who before the separation had been staying home with the children, has resumed employment. She works for the Copiah County Medical Center where she works the daytime shift and is able to be home with the children in the evenings. Thus, the chancellor found this factor neutral, and favoring neither party.

### F. Physical and Mental Health, Age, and Moral Fitness of Parents

¶17. The chancellor found nothing concerning regarding either Cari's or Matthew's mental or physical health. As for moral fitness, he points out that both parties have exhibited questionable behavior, including adulterous relationships. The chancellor found this factor

favored neither party.

### G. *Emotional Ties of Parent and Child and Stability of Home Environment*

¶18. The chancellor found that "the undisputed weight of the evidence shows that the oldest boys have closer emotional ties with their father." He noted that the GAL believed those ties were a result of Matthew's manipulation. The chancellor disagreed with the GAL's analysis. The chancellor noted that the two older boys blamed their mother for their parents' divorce and that the oldest son had actually had a physical altercation with Cari. The chancellor found that the middle boy was more aligned with his older brother because of his age. The chancellor found the younger boy was very young when the parties separated and has been "uninfluenced by any of the issues surrounding the divorce." The chancellor found that this factor favored Matthew as to the two older boys, but favored Cari as to the youngest boy.

### H. *Moral Fitness of Parents*

¶19. The chancellor noted that the moral fitness of the parties had been discussed at length earlier in the order and that this factor favored neither party. *See supra* ¶17.

### I. *Home, School, and Community Record of the Child*

¶20. The chancellor found this factor neutral. The boys all attended the same school, and both Cari and Matthew were involved and supportive of the boys' interests and extracurricular activities.

### J. *Preference of the Child at an Age Appropriate to Express a Preference*

¶21. The chancellor found that while not dispositive, this factor favored Matthew, as the two older boys had expressed a preference to live with Matthew. The chancellor stated that he did not agree with the GAL that this was due to manipulation on Matthew's part.

### K. Stability of the Home Environment and Stability of Employment

¶22. The chancellor found this factor slightly favored Cari because she had arranged for an apartment to live in, while Matthew, who planned to remain in the marital home, was not certain he would be able to accomplish a refinance of the home. The chancellor also found that both parties had stable employment.

### L. Any Other Relevant Factor

¶23. The chancellor found this factor favored neither party but noted that the parties had been operating under a temporary order for two years sharing joint physical and legal custody, and the arrangement appeared to be working. While the two older sons had expressed a desire to live with Matthew, the younger boy had stronger emotional ties to Cari, and the chancellor refused to split the siblings.

¶24. After due consideration of each factor and noting that most factors were neutral or weighed equally between the parties, the chancellor found that Cari and Matthew "shall continue to share joint physical and legal custody of the minor children." This decision was contrary to the recommendation of the GAL, as discussed below. Based upon our standard of review, we find no clear error or abuse of discretion in either the chancellor's findings or his decision regarding joint custody.

**II.    Whether the chancellor erred in rejecting the GAL's**

**recommendation for sole physical custody without providing adequate justification as required by Mississippi law.**

¶25.    In *Barber v. Barber*, 288 So. 3d 325, 331-32 (¶27) (Miss. 2020), our supreme court explained:

> When charges of child abuse or neglect arise, Mississippi Code Section 93-5-23 mandates the appointment of a guardian ad litem. The statute provides that a court "*shall* appoint a guardian ad litem if charges of child abuse or neglect are raised in a child custody action. Miss. Code Ann. § 93-5-23 (Rev. 2018) (emphasis added). Under this statute, a judge is required to "investigate, hear and make a determination" regarding allegations of abuse. *Id.* And the court "is provided discretion to determine if issues of abuse or neglect have sufficient factual basis to support the appointment of a guardian ad litem." *Carter v. Carter*, 204 So. 3d 747, 759 (Miss. 2016) (citing Miss. Code Ann. § 93-5-23 (Rev. 2013)). Upon appointment, a guardian ad litem is obligated "to protect the interest[s] of the child[ren] for whom he has been appointed" and is authorized to "investigate, make recommendations to the court or enter reports as necessary to hold paramount the child's best interest." Miss. Code Ann. § 43-21-121(3) (Supp. 2019). When appointed in accordance with Section 93-5-23, the guardian ad litem must be an attorney. Miss. Code Ann. § 93-5-23.

¶26.    In this case, there were allegations of abuse, so the appointment of a GAL was mandatory under section 93-5-23. The supreme court has also held that "when the [guardian ad litem's] appointment is mandatory, a chancellor must include a summary of the guardian ad litem's recommendations in his or her findings of fact and conclusions of law." *Barber*, 288 So. 3d at 333 (¶32). And "when a chancellor's ruling is contrary to [that] recommendation" the court must state "the reasons for not adopting the . . . recommendation . . . in the findings of fact and conclusions of law." *S.N.C. v. J.R.D.*, 755 So. 2d 1077, 1082 (¶18) (Miss. 2000).

¶27.    Cari argues that the chancellor failed to include a summary of the GAL's

recommendation in his findings of fact and conclusions of law and that the chancellor failed to state his reasons for not adopting the GAL's recommendation. We disagree.

¶28. The chancellor prepared a forty-three-page opinion. He begins with a procedural background of the case and then recites what he determined to be important parts of each witness' testimony. In his conclusions of law, when the chancellor begins his findings on custody, he notes that the "polestar consideration is the best interest and welfare of the child." He further points out that he is the sole finder of fact regarding the credibility of the witnesses, and it is his "sole responsibility to determine credibility of witnesses and evidence."

¶29. The chancellor then goes into an *Albright* analysis, weighing each factor individually. He finds two factors that favor Matthew, one factor that slightly favors Cari, eight factors that favor neither party, and one factor that was split depending on which child was being considered. During the chancellor's recitation of the witness testimony, he sets forth a detailed summary of the GAL's testimony, noting that her complete report was contained in Exhibit 1 at trial and that her *Albright* analysis is contained therein. He concludes when considering her recommendations:

> Following her evaluation, Mrs. Hasie opined – based on a detailed *Albright* analysis – that Cari White should be awarded sole physical custody of the minor children. While the Court finds much of the Guardian ad Litem's analysis persuasive, it ultimately reaches a different conclusion as explained in the Court's independent *Albright* findings set forth below.

¶30. The GAL concludes her report with a recommendation that Cari be granted sole physical custody of the boys because "Matthew has actively alienated [C.W. and J.W.] from

11

Cari, he does not seem to properly admonish the two oldest children for foul language, and his use of a slur against [C.W.]" However, during his testimony, Matthew denied alienating the boys from Cari, and while admitting that the boys had used foul language in his presence, he stated that he corrected them. Further, he admitted to using a slur against C.W. but testified that it was a joke and that C.W. thought it was funny.

¶31.   In *Barber*, 288 So. 3d at 331 (¶26), the supreme court explained:

> This Court has held that "the guardian ad litem should never serve as a substitute for the court. The court is not bound by the guardian ad litem's recommendation . . . ." [*S.G. v. D.C.*, 13 So. 3d 269, 282 (Miss. 2020)] (footnote omitted). To be sure, guardians ad litem serve important roles as "appointed . . . investigator[s] for, or advisor[s] to, the court," and, as authorized, "the guardian ad litem, should recommend a course of action to the court . . . ." *Id*. at 282. **This Court has emphasized that "the trial court, and not the guardian ad litem, is the ultimate finder of fact."** *Id*. at 283. Further, this Court will not impose a strict rule in circumstances in which chancellors are authorized to exercise their discretion "as the needs of a particular case dictate . . . ." *Id*. at 281; *see also S.N.C. v. J.R.D.*, 755 So. 2d 1077, 1082 (Miss. 2000) ("Although this Court has required a guardian ad litem to perform tasks competently, there is no requirement that the chancellor defer to the findings of the guardian ad litem, as is proposed by the petitioners. Such a rule would intrude on the authority of the chancellor to make findings of fact and to apply the law to those facts.").

(Emphasis added).

¶32.   In his order, the chancellor specifically noted that he disagreed with the GAL on the reasons that she believed it was in the boys' best interests for Cari to have physical custody, particularly her belief that Matthew had manipulated the older boys. He further explained that the court was "concerned that placing the children in the sole physical custody of their mother could cause unrest with the eldest and lead to further erosion of their relationship."

¶33.   With the chancellor as the ultimate finder of fact, and given our standard of review,

we cannot say that the chancellor's decision not to accept the GAL's recommendation was manifestly wrong or clearly erroneous. To the contrary, the chancellor's ruling was supported by credible evidence. This assignment of error has no merit.

## CONCLUSION

¶34. We find that the chancellor's decision to award joint legal and physical custody of the minor children to their parents is supported by substantial credible evidence. Therefore, we affirm the chancellor's decision.

¶35. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**